UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KURT SCHNELL,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>INTERSTATE ASSEMBLY SYSTEMS, INC.,<br><br>　　　　Defendant. | No.  2:24-cv-1314-CKD<br><br><br>ORDER |

　　　　This is a diversity action in which plaintiff Kurt Schnell alleges state-law retaliation and wrongful termination claims. (ECF No. 1-1.) This matter is before the undersigned for all purposes including trial and entry of judgment. (See ECF Nos. 6, 7, 8.) The parties' competing motions for summary judgment are before the court. (ECF Nos. 17, 18.) These motions are suitable for decision without oral argument under Local Rule 302(g), and the hearing set to take place on July 9, 2025, is vacated. For the reasons set forth below, both motions are denied.

## BACKGROUND

　　　　Plaintiff filed the complaint in the Yolo County Superior Court and defendant removed the case to this court on May 6, 2024. (ECF No. 1.) The complaint asserts three causes of action: (1) retaliation under California Labor Code § 98.6; (2) retaliation under California Labor Code § 1102.5; and (3) wrongful termination in violation of public policy. (ECF No. 1-1.)

1

1  The parties filed their competing motions for summary judgment on April 23, 2025. In general, plaintiff's motion argues (1) a presumption of retaliation arises because plaintiff was terminated by defendant within 90 days of complaining of unpaid wages; (2) defendant lacks the evidence needed to meet the heightened "clear and convincing" standard to overcome the presumption of retaliation; and (3) defendant is liable for punitive damages. (ECF No. 17.) Defendant's motion argues the undisputed material facts demonstrate plaintiff did not engage in protected activity, was not terminated for reasons related to protected activity, and was terminated instead for legitimate, non-discriminatory reasons that would cause any reasonable employer to terminate. (ECF No. 18 at 2.) The motions are fully briefed. (ECF Nos. 19, 20, 21, 22.)

## LEGAL STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the moving party shows there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To obtain summary judgment, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Summary judgment should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the

2

nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 447 U.S. at 248.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968)). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Central Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the

3

non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

**UNDISPUTED FACTS**

Plaintiff began working for Lodi Truck and Equipment ("Lodi") on or about November 23, 2020. (PUMF[1] 1.) On or about April 6, 2022, Lodi implemented a bonus plan that provided the following: Guaranteed 10% of base salary paid quarterly; plus additional bonus equal to 5% of annual base salary if Service Dept. gross profit is between $500,000-$600,000; or additional bonus equal to 10% of annual base salary if Service Dept. gross profit exceeds $600,000. (PUMF 2.)

Defendant acquired Lodi Truck and Equipment near the end of October 2022. (DUMF[2] 1.) At all times relevant, Landis Brozak was Executive Vice President for defendant, Angela Fink was defendant's Vice president of Human Resources, and Spencer Hinson was defendant's Vice President of Operations. (PUMF 53, 54, 55.) Hinson was the former owner of Lodi Truck and Equipment and continued to supervise plaintiff after defendant acquired the company. (PUMF 6.)

As part of defendant's acquisition of Lodi, defendant offered plaintiff the position of Service Manager with a start date of October 3, 2022, although plaintiff's original date of hire (November 23, 2020) was to be used for vesting, benefit and accrual reasons. (PUMF 4.) Under the heading "Compensation Package," defendant's written offer to plaintiff stated: "Commission will remain as is for the remainder of 2022." (PUMF 5.)

As part of defendant's acquisition of Lodi Truck and Equipment, defendant decided to restructure the compensation plan for former Lodi Truck employees beginning in November 2022, and, specifically, to change the structure of bonus payments from an annual bonus to monthly payments.[3] (DUMF 3.) Defendant did not have Plaintiff sign a pay plan memorializing any change in structure of bonus payments. (PUMF 8.) Plaintiff was paid $820.00 per month

---

[1] See Defendant's Response to Plaintiff's Statement of Undisputed Facts. (ECF No. 20-2.)
[2] See Plaintiff's Response to Defendant's Statement of Undisputed Facts. (ECF No. 19-4.)
[3] The parties dispute whether and to what extent the change was communicated to plaintiff orally and/or in writing. In addition, under plaintiff's evidence and argument, defendant failed to comply with certain requirements of California Law to memorialize the change. (See ECF No. 19-4 at 2-3; ECF No. 20-2 at 3-4.)

beginning in November 2022 pursuant to defendant's decision to change the structure of bonus payments and was paid that sum each month until his termination in February of 2024. (DUMF 3, 18.)

On or about January 11, 2024, plaintiff emailed Hinson the following: "When can I expect you to finish my employee review? Also did my year end bonus get turned in this year? You told me last year to remind you." (PUMF 11.) On or about January 17, 2024, Hinson responded, in part: "I thought we moved your bonus to monthly commission starting in 2023. I just approved December's $820. That should have been approx. $9800 for the year." (PUMF 12.) On the same day, plaintiff replied: "The 820 is [sic] monthly that's correct. Been set that way the whole time. Will submit proof below. Also have the 10k on top of that if service makes over 600k." (PUMF 13.) Hinson then replied: "I have too many to keep track of. Will look tomorrow when I'm back in. Thanks." (PUMF 14.) Later, in response to plaintiff's inquiry, defendant reminded plaintiff that defendant's compensation structure utilized monthly commission payments rather than the annual bonus payment formerly utilized by Lodi and reminded plaintiff he had been paid the equivalent of his prior bonus in monthly installments. (DUMF 10, 11.)

Fink, Brozak, and Hinson internally discussed plaintiff's belief that he was owed the year-end bonus. (PUMF 22.) On January 26, 2024, defendant agreed to make a one-time bonus payment of $10,500 to plaintiff in an attempt to avoid turnover, incentivize better work performance, and fully resolve any confusion regarding compensation structure. (DUMF 12.)

On February 7, 2024, defendant received an email with an employee complaint about plaintiff's performance. (DUMF 13.) On or about February 8, 2024, Hinson emailed defendant's Human Resources Department, and copied Brozak, stating that he (Hinson) wanted to terminate plaintiff's employment based on the email. (PUMF 28.) Brozak, Hinson, and Fink discussed Hinson's request and agreed to terminate plaintiff's employment, with Hinson being the final decision maker. (PUMF 31, 32.) On or about February 9, 2024, Hinson met with plaintiff in person and told plaintiff he "was being terminated for performance reasons" and that the department was not satisfactorily running from a financial or professional standpoint. (PUMF 33.)

////

      Plaintiff received the additional one-time bonus payment on the day he was terminated, on February 9, 2024. (PUMF 50.) Another employee who was plaintiff's direct report also had her job eliminated. (DUMF 17.)

      Brozak had observed plaintiff using inappropriate language in the workplace, had verbally counseled plaintiff on inappropriate language more than once, and believed the employee's "email validated observations over the last few years or two years...." (DUMF 5, 6; PUMF 29, 39.) Hinson had witnessed plaintiff allegedly being unprofessional for a couple of years and had verbally corrected plaintiff on multiple occasions. (PUMF 36.) Fink had repeatedly witnessed plaintiff making inappropriate jokes relating to race, ethnicity, and gender and had corrected him by saying "those are things that we don't say in the workplace." (DUMF 7, 15; PUMF 46.) Prior to his termination, plaintiff had been counseled regarding proper billing procedures. (DUMF 9.) Plaintiff had never been written up and was due for a review at the time Hinson stated his desire to terminate plaintiff. (PUMF 34.)

## DISCUSSION

### I.    First Cause of Action

      California Labor Code section 98.6 makes it unlawful to "discharge an employee or in any manner discriminate, retaliate, or take any adverse action against any employee" because they "made a written or oral complaint that they are owed unpaid wages" among other listed protected conduct. Cal. Lab. Code § 98.6(a). To establish a prima facie case, a plaintiff must generally show "(1) he engaged in a protected activity, (2) his employer subjected him to an adverse employment action, and (3) there is a causal link between the two." St. Myers v. Dignity Health, 44 Cal.App.5th 301, 314 (2019). Under an amendment to section 98.6 that was effective last year, "[i]f an employer engages in any action prohibited by this section within 90 days of the protected activity specified in this section, there shall be a rebuttable presumption in favor of the employee's claim." Cal. Lab. Code § 98.6(b)(1); see S.B. 497, effective January 1, 2024.

      Neither party meets their burden to establish that summary judgment in their favor is warranted for this cause of action. Viewing the facts in a light favorable to plaintiff, there is evidence that his complaints about unpaid wages made in January 2024 were causally linked to

6

his termination 29 days after the initial complaint. Temporal proximity, considered in context of the factual setting, may stand alone as evidence of causation in employment retaliation contexts when the timing is "very close." Clark Cnty. School Dist. v. Breeden, 532 U.S. 268, 273 (2001); see also Van Asdale v. Int'l Game Tech., 577 F.3d 989, 1003 (9th Cir. 2009). Defendant's motion fails to show that plaintiff's termination in February 2024 was for legitimate, non-discriminatory reasons simply because defendant can point to other reasons for the adverse action, such as the February 7, 2024, email, and related issues with plaintiff's behavior and/or performance. Moreover, the argument that defendant is entitled to summary judgment because plaintiff failed to put forth evidence of pretext (ECF No. 22 at 10-11) ignores the burden-shifting framework of California Labor Code section 98.6.

The court also rejects defendant's argument that plaintiff did not engage in protected activity because he was not entitled to the additional payment he demanded. (See ECF No. 18-1 at 6-7.) Defendant argues the plain language of California Labor Code section 98.6 limits its protections to employees who have made a "bona fide complaint." (ECF No. 22 at 4.) However, the filing of a "bona fide complaint or claim" relating to an employee's rights under the jurisdiction of the Labor Commissioner is one listed protected activity, while making "a written or oral complaint that they are owed unpaid wages" is a different listed protected activity. See Cal. Lab. Code § 98.6(a). Defendant provides no authority for the proposition that plaintiff's complaint that he was owed unpaid wages had to be accurate or "bona fide" in order for defendant to be liable under section 98.6. Defendant's motion for summary judgment on plaintiff's section 98.6 claim is denied.

Turning to plaintiff's motion, plaintiff fails to establish causation as a matter of law. Plaintiff argues the February 7, 2024, email was pretext, but the record contains sufficient evidence to support a finding that his termination by defendant was legitimate and non-discriminatory. See Pinder v. Emp. Dev. Dep't, 227 F. Supp. 3d 1123, 1149 (E.D. Cal. 2017) ("A plaintiff's job performance and behavior is properly included as a surrounding circumstance in determining pretext where the plaintiff's primary evidence is temporal proximity."). Whether defendant has successfully rebutted the presumption in favor of plaintiff's claim under California

Labor Code section 98.6 with the evidence about the February 7, 2024, email and related evidence about performance and unprofessional behavior is a question for a jury.[4] Accordingly, plaintiff's motion for summary judgment as to the first cause of action is also denied.

## II. Second Cause of Action

Under California Labor Code section 1102.5, it is unlawful to "retaliate against an employee for disclosing information… to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance… if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation." Cal. Lab. Code § 1102.5(b). Claims under section 1102.5 are analyzed under a statutorily prescribed burden-shifting framework:

> [O]nce it has been demonstrated by a preponderance of the evidence that an activity proscribed by Section 1102.5 was a contributing factor in the alleged prohibited action against the employee, the employer shall have the burden of proof to demonstrate by clear and convincing evidence that the alleged action would have occurred for legitimate, independent reasons even if the employee had not engaged in activities protected by Section 1102.5.

Cal. Lab. Code § 1102.6; see also Lawson v. PPG Architectural Finishes, Inc., 12 Cal. 5th 703, 712 (2022) ("section 1102.6, and not McDonnell Douglas [Corp. v. Green 411 U.S. 792 (1973)], supplies the applicable framework for litigating and adjudicating section 1102.5 whistleblower claims").

For plaintiff's second cause of action, the conduct protected by section 1102.5 is disclosing information "the employee has reasonable cause to believe… discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation." See Cal. Lab. Code § 1102.5(b) Courts have interpreted the statutory language "reasonable cause to believe" to refer to employees who "reasonably believe" that the information

---

[4] Citing California Labor Code section 1102.6, plaintiff argues defendant must rebut the presumption in favor of plaintiff's section 98.6 claim with clear and convincing evidence. (ECF No. 17-4 at 5, 12-14.) Section 1102.6 applies to "a civil action or administrative proceeding brought pursuant to Section 1102.5" and no other listed sections. Plaintiff does not provide authorities demonstrating that the court should apply section 1102.6 to the section 98.6 claim.

they reveal discloses a violation of or noncompliance with the law. See Vatalaro v. Cnty. of Sacramento, 79 Cal. App. 5th 367, 380 (2022). Whether plaintiff had reasonable cause to believe defendant was acting unlawfully is a question of fact for a jury in this case.

Plaintiff argues he was engaged in protected activity because he legitimately believed he was lawfully owed a year-end bonus as evidenced by the fact that defendant paid it. However, the assertion that he was clearly owed the year-end bonus is conclusory and disputed by defendants' evidence. Landis testified he communicated to plaintiff at the time of the job offer that the bonus structure created in April 2022 was no longer in effect and that defendant was converting its structure from a yearly bonus to monthly commission payments. (ECF No. 20-6 at 6-9.) Under defendant's evidence in the form of Fink's declaration, this change in structure was communicated to plaintiff in writing. (ECF No. 18-7, ¶ 4.) The document at issue states under the headings "Commission/Bonus Change and Commission/Bonus Notes" the following: "Kurt should received [sic] a guaranteed monthly commission of $820 ending December 2022, Paid Jan 2023. He will be on a future determined OP % starting in 2023." (ECF No. 18-8 at 2.) Also under defendant's evidence, defendant paid plaintiff $820 per month beginning in November 2022 which constituted payment of the wages at issue.[5] (Id. at 6-7.)

But even assuming for purposes of plaintiff's motion that plaintiff has demonstrated by a preponderance of the evidence that his protected whistleblower activity was a contributing factor in his termination, the ultimate issue of causation is a question for a jury. Defendant puts forth sufficient evidence, if believed, for a jury to find by clear and convincing evidence that plaintiff's termination would have occurred for legitimate, independent reasons related to plaintiff's job performance and behavior even if plaintiff had not engaged in the protected whistleblower activity in question. See Pinder, 227 F. Supp. 3d at 1149.

Defendant's motion likewise fails as to the second cause of action. Even though it is undisputed that plaintiff was paid the $820 monthly bonus payments and that defendant explained

---

[5] Defendant also asserts plaintiff received a $2,271.00 one-time payment in February 2023. (See ECF No. 20-2; ECF No. 18-7, ¶ 5 & ECF No. 18-9.) Defendant asserts this payment was related to commissions earned but not paid during the transition period in 2022 between Lodi and defendant. (ECF No. 20 at 11.)

to plaintiff no further wages were owed, a jury could find plaintiff had reasonable cause to believe he was owed unpaid wages in violation of law. Defendant did not have plaintiff sign a pay plan memorializing any change in the structure of bonus payments and defendant's written offer to plaintiff had stated "Commission will remain as is for the remainder of 2022." (PUMF 5.) Under plaintiff's evidence, defendant did not provide written notice of any change to the commission plan, bonus plan, or pay plan for 2023. (ECF No. 17-2, ¶ 7.) Moreover, plaintiff's original commission plan did not provide only for a 10% bonus, but instead, "Guaranteed 10% of base salary paid quarterly; *plus* additional bonus equal to 5% of annual base salary, or additional bonus equal to 10% of annual base salary, depending on the "Service Dept. gross profit[.]" (PUMF 2 (emphasis added).)

Viewing the facts in a light favorable to plaintiff, a jury could find plaintiff engaged in protected whistleblower activity and that the January 2024 complaint about unpaid wages was a "contributing factor" in his termination. See Lawson, 12 Cal. 5th at 713-14 ("plaintiffs may satisfy their burden of proving unlawful retaliation even when other, legitimate factors also contributed to the adverse action"). In order to be entitled to summary judgment, defendant would need to "demonstrate by clear and convincing evidence that the alleged action would have occurred for legitimate, independent reasons…." See Cal. Lab. Code § 1102.6. Depending on how a jury resolves credibility questions, the temporal proximity of plaintiff's protected whistleblower activity and his termination could stand alone as evidence supporting causation. See Clark Cnty. School Dist., 532 U.S. at 273; Van Asdale, 577 F.3d at 1003. Whether defendant's evidence about the independent reasons for plaintiff's termination makes the required showing is a question for a jury. See Pinder, 227 F. Supp. 3d at 1149. Thus, both motions for summary judgment are denied as to plaintiff's second cause of action.

### III.    Third Cause of Action and Punitive Damages

The parties agree the third cause of action for wrongful termination in violation of public policy is derivative of and based on the statutory retaliation claims. (ECF No. 17-4 at 17; ECF No. 18-1 at 9.) The competing motions for summary judgment are therefore denied for the reasons discussed above. Plaintiff's request for summary judgment on the issue of punitive

damages is also denied because the undisputed facts viewed in a light favorable to defendant establish a genuine dispute regarding defendant's reasons for terminating plaintiff's employment.

**ORDER**

For the reasons set forth above, IT IS ORDERED as follows:

1. The court VACATES the hearing set to take place on July 9, 2025.
2. Defendant's motion for summary judgment (ECF No. 17) is DENIED.
3. Plaintiff's motion for summary judgment (ECF No. 18) is DENIED.
4. The parties' notice of trial readiness is due within 30 days of the date of this order. (<u>See</u> ECF No. 16 at 4.)
5. The court will require the parties to participate in private mediation or attend a settlement conference with another magistrate judge at least 60 days before any trial of this action. Should the parties wish to schedule a settlement conference, they are to contact the undersigned's courtroom deputy clerk to inquire as to the availability of another magistrate judge.

Dated: June 27, 2025

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

8, Schnell24cv1314.x-msj

11